**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:26-CR-11 CCB SJF** |
| | ) | |
| **SCOTT PRUITT** | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION TO REVOKE THE MAGISTRATE JUDGE'S DETENTION ORDER AND REQUEST FOR IMMEDIATE RELEASE WITH CONDITIONS

Defendant Scott Pruitt by his attorney, Kimberly L. Schultz, respectfully moves this

Honorable Court to vacate Magistrate Judge Scott Frankel's detention order pursuant to 18

U.S.C. § 3145(b) and order Scott Pruitt released from custody pursuant to the Bail Reform Act

(BRA) and the Fifth Amendment's Due Process Clause. This motion arises under 18 U.S.C. §

3145(b), which provides for de novo review of a magistrate judge's detention order. *See, e.g.,*

*United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (although § 3145 "speaks of 'review'

by the district judge, the court may start from scratch"); *United States v. Clark*, 865 F.2d

1433,1436 (4th Cir. 1989). A motion for revocation or amendment "shall be determined

promptly," reflecting the serious nature of detaining any defendant unnecessarily. § 3145(b). In

support of this motion, Scott Pruitt states as follows:

On or around February 13, 2026, Scott Pruitt was arrested on an indictment charging him

with four counts of making threats in interstate commerce in violation of Title 18, United States

Code, Section 875 (c).  Magistrate Judge Frankel held Scott's Pruitt's initial appearance and

arraignment on February 17, 2026. At that Initial Appearance, the government requested

1

detention on the grounds that Mr. Pruitt, but the docket does not reflect the basis of the request, i.e. that he was a danger to the community or a risk of flight. Judge Frankel detained Mr. Pruitt pending a Detention Hearing. A Detention Hearing was held on February 23, 2026. Magistrate Judge Frankel detained Mr. Pruitt because he found Mr. Pruitt was danger to the community. He did not find that Mr. Pruitt is a flight risk. This motion follows.

I.      **It was unlawful and unconstitutional for a court to hold a Detention Hearing or detain a defendant at all when, as here, there is no basis for detention under 18 U.S.C. § 3142(f).**

The Magistrate Judge erred as a matter of law in detaining Mr. Pruitt without a § 3142(f) factor having been established by a preponderance of the evidence. As all six courts of appeals to directly address the question have recognized, the only permissible bases for detaining a defendant at the Initial Appearance and proceeding to a Detention Hearing are the enumerated factors set out in 18 U.S.C. § 3142(f). The concepts of "dangerousness" or "safety of the community" are simply not among the factors listed in § 3142(f) and are therefore not legitimate bases for detention at the Initial Appearance hearing. The federal courts of appeals all reach this same conclusion. Further, data from the Administrative Office of the U.S. Courts show that there is an exaggerated concern over risk of flight in our system, and that the vast majority of released defendants do not flee.

Because Scott Pruitt is not charged with a § 3142(f)(1) offense, this is a "non-(f)(1) case" where only a showing of one of the § 3142(f)(2) "serious risk" factors would authorize holding a Detention Hearing.[1] In this case, the government has not presented sufficient evidence that Scott Pruitt poses a "serious risk" of flight to authorize detention under § 3142(f)(2)(A). Scott Pruitt is

---

[1] Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 91 (2022), https://freedomdenied.law.uchicago.edu/report.

therefore being presently detained unlawfully. Accordingly, Scott Pruitt must be released on bond immediately with appropriate conditions of release. See 18 U.S.C. § 3142(a)–(c).

In a new national study, The University of Chicago Law School's Federal Criminal Justice Clinic (FCJC) found that courts nationwide do not consistently adhere to the legal standard in non-(f)(1) cases, in violation of the Bail Reform Act.[2] Across hundreds of non-(f)(1) cases like this one, 12% of defendants were unlawfully detained at the Initial Appearance, as "no statutory basis for detention existed under § 3142(f)."[3] In 97% of non-(f)(1) cases where the government was seeking detention, the prosecutor "cited improper grounds, like danger to the community or ordinary risk of flight."[4] Yet every single defendant was nevertheless detained at the Initial Appearance and faced an "improper Detention Hearing."[5] The study found that these practices exacerbated racial disparities.[6] In response to these findings, some judges and defense attorneys have emphasized that federal pretrial detention is under "scrutinized," with Judge Nancy Gertner (ret.), who spent 17 years on the federal bench, telling USA Today: "I didn't really know what was going on at the magistrate level because no one brought it to our attention. . . This is a completely unexamined, un-appealed process."[7]

These troubling national data suggest that federal magistrate judges must vigilantly ensure that the government's detention requests comport with the BRA's requirements. On review, this Court must reverse any detention order—such as this one—that is not legally

---

[2] *Id.* at 93.
[3] *Id.* at 95.
[4] *Id.* at 99.
[5] *Id.*
[6] *Id.* at 97–100 (finding that people of color were unlawfully detained in non-(f)(1) cases at a higher rate compared to white defendants and that prosecutors cited improper bases for detention more frequently against people of color.
[7] Tami Abdollah, *Study: Federal Magistrates, Prosecutors Misunderstand Bail Law, Jailing People Who Should Go Free,* USA TODAY (Dec. 7, 2022), https://www.usatoday.com/story/news/politics/2022/12/07/federal-judges-misapply-bail-law-illegally-   jail-arrestees-study-says/10798949002/.

supported by the BRA, and must not allow Detention Hearings to be held without statutory authorization.

The unlawful detentions that the FCJC's study documents are likely "just the tip of the iceberg."[8] In fact, 60% of all federal pretrial cases are non-(f)(1) cases, meaning that in over half of cases nationwide, "there is a real question of whether the law allows a judge to hold a Detention Hearing at all."[9] Yet defendants are detained at the Initial Appearance in 76% of non-(f)(1) cases nationwide, even though the "only valid ground for detention in such cases requires the prosecutor to prove that the arrestee poses a 'serious risk' of flight or obstruction."[10] In this case, the government has not met that standard and Scott Pruitt must be released immediately.

## II.     The BRA Only Authorizes Detention at the Initial Appearance When One of the § 3142(f) Factors Is Met.

Scott Pruitt is being detained in violation of the law. According to the plain language of § 3142(f), "the judicial officer shall hold a [detention] hearing" only "in a case that involves" one of the seven factors listed in § 3142(f)(1) and (f)(2). None of the § 3142(f) factors were present in this case.[11] Ordinary "risk of flight" is not among the § 3142(f) factors. The statute and the caselaw therefore prohibited any court from holding a Detention Hearing and from detaining Scott Pruitt pending trial in this case. Ordinary "risk of flight" is not among the § 3142(f) factors.

---

[8] *Id.* at 100.
[9] Id. At 92.
[10] Id. At 100.
[11] This case does not meet any of the five factors discussed in § 3142(f)(1), as it does not involve: (1) a crime of violence under (f)(1)(A); (2) an offense for which the maximum sentence is life imprisonment or death under (f)(1)(B); (3) a qualifying drug offense under (f)(1)(C); (4) a felony after conviction for two or more offenses under the very rare circumstances described in (f)(1)(D); or (5) a felony involving a minor victim or the possession/use of a firearm under (f)(1)(E). The government has also presented no evidence to establish that this case meets either of the two additional factors discussed in § 3142(f)(2): (1) a "serious risk that [the defendant] will flee" under (f)(2)(A); or (2) a "serious risk" that the defendant will engage in obstruction or juror/witness tampering under (f)(2)(B).

The statute and the caselaw therefore prohibited any court from holding a Detention Hearing and from detaining Scott Pruitt pending trial.

> A.     **Supreme Court Precedent and the Plain Language of the BRA Prohibit a Court from Detaining the Defendant and Holding a Detention Hearing Without a § 3142(f) Factor.**

The Supreme Court's seminal opinion in *United States v. Salerno*, 481 U.S. 739 (1987), confirms that a Detention Hearing may only be held if one of the seven § 3142(f) factors is present. See id. at 747 ("Detention hearings [are] available if" and only if one of the seven § 3142(f) factors is present.). According to the Supreme Court, "[t]he Act operates only on individuals who have been arrested for a specific category of extremely serious offenses. 18 U.S.C. § 3142(f)." Id. at 750 (emphasis added); see also id. at 747 ("The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes," specifically the crimes enumerated in § 3142(f) (emphasis added)). *Salerno* thus stands for the proposition that the factors listed in § 3142(f) serve as a gatekeeper, and only certain categories of defendants are eligible for detention in the first place. In fact, "a central reason the Supreme Court upheld the BRA as constitutional in *Salerno* was the gatekeeping function of the (f) factors."[12] As the D.C. Circuit has held, "First, a [judge] must find one of six circumstances triggering a detention hearing…. [under] § 3142(f). Absent one of these circumstances, detention is not an option." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999). "Every federal court of appeals that has examined this issue agrees that one of the § 3142(f) factors must be proven at the Initial Appearance in order to hold a Detention Hearing."[13]

---

[12] Seigler, *supra* note 1, at 87.
[13] *Id.* at 88.

For a court to lawfully move forward from an Initial Appearance hearing to a Detention Hearing, "the Government must establish by a preponderance of the evidence that it is entitled to a detention hearing' by presenting a valid (f) factor."[14] If the government does not establish an applicable § 3142(f) factor by a preponderance of the evidence, several conclusions follow: (1) the government is prohibited from seeking detention, (2) there is no legal basis to detain the defendant at the Initial Appearance or pending a Detention Hearing, and (3) there is no legal basis for the court to hold a Detention Hearing.[15] Instead, the court is required to release the defendant on personal recognizance under § 3142(b) or on conditions under § 3142(c).

Detaining Scott Pruitt in this case without regard to the limitations in § 3142(f) raises serious constitutional concerns.[16] The strict limitations § 3142(f) places on pretrial detention are part of what led the Supreme Court to uphold the BRA as constitutional. It was the § 3142(f) limitations, among others, that led the Court to conclude that the Act was "regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." *Salerno*, 481 U.S. at 748.[17]  Throughout its substantive Due Process ruling, the *Salerno* Court emphasized

---

[14] *Id.* If the government does not move for detention, the Court may nevertheless find, on its own motion and by a preponderance of the evidence, that a § 3142(f)(2) factor authorizes the holding of a Detention Hearing.

[15] *Id.* At 88, 91. *Bail,* 51 GEO. L.J. ANN. VER. CRIM. PROC. 396, 399 (2022), https://www.westlaw.com/Document/I43b1e73f204811ed9f24ec7b211d8087/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0

[16] Siegler, *supra* note 1, at 73–74, 87.

[17] The *Salerno* Court further relied on the limitations in § 3142(f) in another component of its substantive Due Process ruling, its conclusion that "the government's interest in preventing crime by arrestees is both legitimate and compelling." *Id.* at 749. To reach this conclusion, the Court contrasted the Bail Reform Act with a statute that "permitted pretrial detention of any juvenile arrested on any charge" by pointing to the gatekeeping function of § 3142(f): "The Bail Reform Act, in contrast, narrowly focuses on a particularly acute problem in which the Government interests are overwhelming. The Act operates *only on individuals who have been arrested for a specific category of extremely serious offenses. 18 U.S.C. § 3142(f).*" *Id.* at 750 (emphasis added). The Court emphasized that Congress "specifically found that these individuals" arrested for offenses enumerated in § 3142(f) "are far more likely to be responsible for dangerous acts in the community after arrest." *Id.*

that the only defendants for whom the government can seek detention are those who are "already indicted or held to answer for a serious crime," meaning the "extremely serious offenses" listed in § 3142(f)(1). *Id*. (emphasis added); *see also United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (discussing the BRA's legislative history). An interpretation "of the [BRA] that allows danger to the community as the sole ground for detaining a defendant where detention was moved for only under (f)(2)(A) runs the risk of undercutting one of the rationales that led the Salerno Court to uphold the statute as constitutional." *United States v. Gibson*, 384 F. Supp. 3d 955, 963 (N.D. Ind. 2019).

### B. The Courts of Appeals Agree that Detention Is Prohibited When No § 3142(f) Factor is Present.

Following the Supreme Court's guidance in *Salerno*, six courts of appeals agree that it is illegal to hold a Detention Hearing unless the government invokes one of the factors listed in 18 U.S.C. § 3142(f). *See, e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman*, 837 F.2d 48, 48–49 (2d Cir. 1988); *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).[18] For example, the First Circuit holds: "Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists." Ploof, 851 F.2d at 11. The Fifth Circuit agrees. *See Byrd*, 969 F.2d at 109 ("A hearing can be held only if one of the . . . circumstances listed in (f)(1) and (2) is present," and "[d]etention can be

---

[18] *See* Siegler*, supra* note 1, at 87–92. (providing a detailed explanation of the legal standard that applies at the Initial Appearance hearing).

ordered, therefore, only 'in a case that involves' one of the . . . circumstances listed in (f)."

(quoting 18 U.S.C. § 3142(f)).

Unfortunately, a practice has developed that results in defendants being detained in violation of the BRA, *Salerno*, and the Constitution. Specifically, it is common for the government to seek detention at the Initial Appearance on the ground that the defendant is either "a danger to the community," "a risk of flight," or both.[19] According to the FCJC study on pretrial detention: "courtwatching data and stakeholder interviews show that lack of adherence to § 3142(f) is not an isolated problem in a few districts but is instead a nearly universal problem that spans federal courts throughout the country."[20] Because neither "danger to the community" nor ordinary "risk of flight" is a factor listed in § 3142(f), it is flatly illegal to hold a Detention Hearing on either of these grounds at the Initial Appearance.[21] The practice in this district must be brought back in line with the law.[22] That will only happen if this Court acts as a bulwark against unlawful practices at the Initial Appearance, reversing detention orders that lack a legitimate basis under § 3142(f).[23]

---

[19] The Clinic found that prosecutors "failed to cite a valid statutory basis for detention" in 81% of the Initial Appearances that the clinic court-watched and that prosecutors cited invalid bases such as "danger to the community" and "non-serious 'risk of flight'" in 38% of cases. *Id.* at 94–95. Compliance was even worse in the non-(f)(1) cases where the prosecutor sought detention: 97% of the time, the prosecutor "provided no legitimate basis for detention." *Id.* at 99 fig.12.

[20] *Id.* at 103.

[21] Siegler*, supra* note 1, at 91–92; *Bail*, *supra* note 15, at 400–401.

[22] *See id.* at 95 (finding that at 99% of the Initial Appearance hearings where the government failed to meet their legal burden and did not cite a valid basis for detention, the defendant was nevertheless detained.)

[23] *See id.* at 107–109. Perhaps the confusion arises because the BRA is not organized in the order in which detention issues arise in court. Although the question of detention at the Initial Appearance comes first in the court process, it is not addressed until § 3142(f). To make matters worse, § 3142(f) itself is confusing. The first sentence of § 3142(f) lays out the legal standard that must be met *at the Initial Appearance* before "the judicial officer shall hold a hearing"—meaning a Detention Hearing. Confusingly, the first sentence of § 3142(f) then goes on to reference the legal standard that applies at the next court appearance, *the Detention Hearing*. See § 3142(f) (explaining that the purpose of the Detention Hearing is "to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of

### III.    It Is Illegal to Detain Scott Pruitt as a Danger to the Community

The Magistrate Judge erred as a matter of law in detaining Scott Pruitt as a danger to the community. "[A]lthough at the Initial Appearance the prosecutor frequently asks the judge to detain the arrestee as a 'danger to the community,' the courts of appeals have stated unambiguously that when none of the (f) factors are met, 'pretrial detention solely on the ground of dangerousness to another person or to the community is not authorized.'"[24] It is not even clear this was argued on the record. Neither the "non- offense-specific risk factors" under § 3142(f)(2) nor the "offense-specific factors" under § 3142(f)(1) "allow a judge to proceed to a Detention Hearing based on . . . danger to the community."[25] The courts of appeals agree that it is unlawful for a judge to detain someone at the Initial Appearance as a "danger" or a "financial danger."[26] *See United States v. Dillard*, 214 F.3d 88, 96 (2d Cir. 2000) ("The question whether the defendant poses a danger to the safety of the community . . . cannot be considered unless the defendant is found to be eligible for detention under subsection 3142(f). A defendant who is not eligible must be released, notwithstanding alleged dangerousness." (emphasis added)); *Friedman*, 837 F.2d at 49 ("The Bail Reform Act does not permit detention on the basis of dangerousness"); *Himler*, 797 F.2d at 160; *Byrd*, 969 F.2d at 110. In fact, as the Ninth Circuit has held, interpreting the BRA to "authorize[] pretrial detention without bail based solely on a finding of dangerousness

---

such person as required and the safety of any other person and the community"). The long paragraph in § 3142(f) that follows § 3142(f)(2)(B) then describes the procedures that apply at the Detention Hearing in depth.

[24] Siegler, *supra* note 1, at 91 (quoting *Ploof*, 851 F.2d at 11).

[25] Siegler, *supra* note 1, at 91.

[26] *Id.* at 92. "Yet despite this prohibition, judges detain 37% of those charged with fraud offenses at the Initial Appearance" nationwide." *Id.* Given that a court is only authorized to hold a Detention hearing in a "narrow subset of 'non-(f)(1) cases,'" this statistic is striking. *Id.* at 91. The FCJC study regularly observed unlawful detentions in fraud cases. *Id.* at 101–102.

would render meaningless 18 U.S.C. § 3142(f)(1) and (2)." *Twine*, 344 F.3d at 987. The Fifth

Circuit in Byrd emphasized that even "a defendant who clearly may pose a danger to society

cannot be detained on that basis alone." 969 F.2d at 110 (*emphasis added*)

IV.     **It Is Illegal to Detain Scott Pruitt At All Because Ordinary "Risk of Flight" Is Not a Statutory Basis for Detention at the Initial Appearance.**

It is unclear why Scott Pruitt was detained at the initial hearing. It was improper for the

Magistrate Judge to detain Scott Pruitt and set a Detention Hearing on the government's bare

allegation that he poses a "risk of flight," (if any basis was stated) for three reasons. First, the

plain language of the statute permits detention at the Initial Appearance only when the defendant

poses a "serious risk" of flight, § 3142(f)(2)(A), but the docket lacks any basis to show that the

government alleged anything more than a mere ordinary risk of flight. Second, the government

bears the burden of presenting some evidence to substantiate its allegation that a defendant is a

serious risk of flight, but here the government has provided no such evidence. Third, to establish

"serious risk" of flight the government must demonstrate that the defendant presents an "extreme

and unusual" risk of willfully fleeing the jurisdiction if released, but the government has not met

that burden here. Accordingly, it was improper to hold a Detention Hearing at all, let alone detain

Scott Pruitt for the duration of the case.

A.     **Supreme Court Precedent and the Plain Language of the BRA Prohibit Detaining a Defendant as an Ordinary "Risk of Flight."**

Ordinary "risk of flight" is not a factor in § 3142(f). By its plain language, §

3142(f)(2)(A) permits detention and a hearing only when there is a "serious risk that [the

defendant] will flee."[27] There is some risk of nonappearance and potentially some risk of flight in

---

[27] *See* Siegler*, supra* note 1, at 91 ("*[O]rdinary* risk of flight is … an impermissible basis on which to order detention at the Initial Appearance or schedule a Detention Hearing.").

every criminal case; "serious risk" of flight means something more. *See United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) (recognizing that "serious flight risk" is "narrower" than "flight risk" and is "distinct from 'risk of non-appearance'"). According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretative canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citation omitted))

**B.     Supreme Court Precedent and the Plain Language of the BRA Prohibit Detaining a Defendant as an Ordinary "Risk of Flight."**

Ordinary "risk of flight" is not a factor in § 3142(f). By its plain language, § 3142(f)(2)(A) permits detention and a hearing only when there is a "serious risk that [the defendant] will flee." There is some risk of nonappearance and potentially some risk of flight in every criminal case; "serious risk" of flight means something more. *See United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) (recognizing that "serious flight risk" is "narrower" than "flight risk" and is "distinct from 'risk of non-appearance'"). According to a basic canon of statutory interpretation, the term "serious risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g., Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretative canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citation omitted)).

**C.     It Was Improper to Detain Scott Pruitt Because the Government Has Provided No Evidence to Support its Claim that Scott Pruitt Is a Serious Risk of Flight.**

Where the government's only legitimate § 3142(f) ground for detention is "serious risk" of flight, the government bears the burden of establishing, by a preponderance of the evidence, that the defendant poses a "serious risk" of flight, rather than the ordinary risk attendant in any criminal case. See Friedman, 837 F.2d at 49. Moreover, a defendant "may be detained only if the record supports a finding that he presents a serious risk of flight." *Himler*, 797 F.2d at 160 (emphasis added); see also *United States v. Robinson*, 710 F. Supp. 2d 1065, 1088 (D. Neb. 2010) (criticizing the government for failing to present evidence of "serious risk" of flight at the Initial Appearance and saying "no information was offered to support [the] allegation"); *White*, 2021 WL 2155441, at *7 (holding that "a court may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue"). After all, the statute authorizes detention only "in a case that involves" a "serious risk" that the person will flee. § 3142(f)(2)(A) (emphasis added). This contemplates a judicial finding about whether the case in fact involves a serious risk of flight.[28] The government must provide an evidentiary basis to enable the judge to make an informed decision, typically evidence that relates either to the defendant's history and characteristics or to the circumstances of the offense.[29] The government has presented no such evidence here.

---

[28] Had Congress intended to authorize Detention Hearings based on a mere certification by the government, Congress could have enacted such a regime, just as they have done in other contexts. *See, e.g.*, 18 U.S.C. § 5032 (creating exception to general rule regarding delinquency proceedings if "the Attorney General, after investigation, certifies to the appropriate district court of the United States" the existence of certain circumstances); 18 U.S.C. § 3731 (authorizing interlocutory appeals by the government "if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding").

[29] *See* Siegler*, supra* note 1, at 109 ("Because the law demands a showing that any risk of flight is "serious," the prosecution should present some evidence to meet its burden, such as evidence about the particular arrestee's history and characteristics (e.g., past failures to appear in court) or to the circumstances of the offense (e.g., the person led the police in a high-speed chase).").

**D.**      **Detaining a Defendant as a "Serious Risk of Flight" Is Appropriate Only in "Extreme and Unusual Circumstances" Involving a Heightened Risk of "Intentional" Flight.**

The BRA's legislative history makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[30] The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here. Courts have articulated the elements of this extreme or unusual standard in different ways, but the upshot remains the same—defendants are "serious" flight risks in only rare cases. *See United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant."); *see also United States v. Runsdorf*, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) (finding that the government must establish "a heightened likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense" (emphasis added)). The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—people the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process.[31] See *White*, 2021 WL 2155441, at *7 (holding that a "case involves a 'serious risk of

---

[30] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases.*") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances*. . . justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

[31] *See* Lauryn Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 725 (2017). This rule is sound policy, as the risk of a defendant becoming either a "local absconder" (who intentionally fails to appear but remains in the jurisdiction), *id.* at 735, or a "low-cost non-appearance" (who unintentionally fails to appear), *id.* at 729, can be

flight,' as opposed to a mere risk of non- appearance, if it involves a serious risk that the defendant intentionally will avoid court proceedings"). Risk of flight is not the same as risk of nonappearance, see *White*, 2021 WL 2155441, at \*10, and a defendant should never be detained as a "serious risk" of flight when the risk of flight or nonappearance can be mitigated by conditions of release.

### V. In This Case, the Government Has Not Met Its Burden of Proving That Scott Pruitt Poses a "Serious" Risk Of Flight Under § 3142(f)(2)(A).

Scott Pruitt must be released immediately on conditions because the government did not argue that Scott Pruitt posed a "serious risk" of flight and did not present any evidence whatsoever to establish that "there is a serious risk that the [defendant] will flee" the jurisdiction under § 3142(f)(2)(A). Although the defense bears no burden of proof, it is clear from Scott Pruitt's history and characteristics that he does not pose a serious risk of flight. Scott Pruitt has longstanding ties to the community. His mother, his closest family member resides here. He has never failed to show up for court. In fact, at the time of the previous hearing, Scott was gainfully employed in the community and had been renting a room in a friend's home for a period of time. Scott also doesn't have the means to flee. He is indigent.

As in *United States v. Morgan*, 2014 WL 3375028 (C.D. Ill. July 9, 2014), "the facts fail to establish any risk of flight," let alone a risk serious enough to authorize a Detention Hearing. Id. at \*5 ("[T]he defendant has lived at his current address for over seven years and has lived in the same community for his entire life. His mother and siblings also all live relatively close to his

---

addressed by imposing conditions of release like electronic monitoring, GPS monitoring, and support from pretrial services.

residence, as do his children. Additionally, nothing in his criminal history suggests that he ever failed to appear for a court hearing.

Because Scott Pruitt does not present a "serious risk" of flight, § 3142(f)(2)(A) is not met. As neither § 3142(f)(1) nor § 3142(f)(2) is satisfied, a Detention Hearing was not authorized, and he cannot be detained under the law.

**VI.    Statistics Showing that It Is Extraordinarily Rare for Defendants on Bond to Flee or Recidivate Further Demonstrate that Scott Pruitt Does Not Pose a Serious Risk of Flight.**

The government's own data prove that judges can release more people without risking higher rates of crime and flight. In this case, this Court should be guided by AO statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new crimes on bond.[32] Significantly, this near-perfect compliance rate is seen equally in federal districts with very high release rates and those with very low release rates.[33] Even in districts that release two-thirds of all federal defendants on bond, just 1% fail to

---

[32] App. 1, AO Table H-15 (Sept. 30, 2022). These high compliance rates have remained remarkably consistent over time, both before and after the pandemic. *See, e.g.*, Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide appearance rate of 99% and non-rearrest rate of 98%).

[33] The data showing near-perfect compliance on bond is illustrated in the figure below. Siegler, *supra* note 1, at 25 fig.4. The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending September 30, 2021. *See* App. 2, AO Table H-14A (Sept. 30, 2021), https://perma.cc/CYV5-3TZ6. The failure-to-appear and rearrest rates for these districts were calculated using App. 1, AO Table H-15. With regard to flight, the ten federal districts with the lowest release rates (average 20.00%) have an average failure-to-appear rate of 1.6%, while the ten districts with the highest release rates (average 64%) have an *even lower* failure-to-appear rate of 1.1%.*See* App. 1; App. 2. With regard to recidivism, the ten districts with the lowest release rates have an average rearrest rate on bond of 0.8%, while the ten districts with the highest release rates have an average rearrest rate of 1.1%. *See* App. 1; App. 2.

appear in court and 1% are rearrested while released.[34] The below chart reflects shows the same vanishingly low failure to appear and rearrest rates based on AO data spanning 2007 to 2021.[35]



**Figure 4:** Even When Release Rates Increase, Arrestees Almost Never Flee or Recidivate.

In addition, as the federal Probation and Pretrial Services Office recently highlighted, release rates rose slightly during the pandemic but failure-to-appear and rearrest rates did not increase.[36] Release rates increased from 25% in 2019 to 36% in 2021 but "the rates at which people on pretrial release failed to appear in court or were rearrested remained extremely low."[37]

---

[34] *See* App. 1; App. 2.
[35] *See* Siegler, *supra* note 1, at 25 fig.
[36] *Id.* at 246 n.42.
[37] *Id.*

The bond statistics for the Seventh Circuit and this district likewise strongly suggest that Scott Pruitt should be released. In this circuit, released federal defendants failed to appear for court 1.38% of the time in 2021 (a total of 46 defendants with 3,312 defendants on release status), and only 2.59% of defendants were rearrested on release (a total of 86 defendants of the 3,312 defendants on release status). *See* App. 1, AO Table H-15. Yet despite the statistically low risk of flight and recidivism that defendants like Scott Pruitt pose, the government recommends detention in 71% of cases nationwide and in 93.2% of cases in this district. *See* App. 3, AO Table H-3. Clearly the government's detention requests are not tailored to the low risk of flight and recidivism that defendants in this district and elsewhere pose.

Scott Pruitt must be released because the government has not presented evidence that shows that he would be among the approximately 1% of defendants nationwide who fail to appear in court or are rearrested on bond, let alone that there is "a serious risk that the defendant intentionally will avoid court proceedings." *White*, 2021 WL 2155441, at *7. Detaining Scott Pruitt without evidence that they pose a "serious risk" of flight violates his constitutionally protected liberty interest.

## VII.    There Is No Other Basis to Detain Scott Pruitt as a Serious Risk of Flight in this Case.

The potential penalty in this case is not a legitimate basis for finding a serious risk of flight. There is no evidence Congress intended courts to *de facto* detain any client facing a long prison sentence. Indeed, many federal defendants face long sentences—being a defendant in a run-of-the-mill federal case cannot possibly be an "extreme and unusual circumstance." Relatedly, if a finding of serious risk of flight under § 3142(f)(2) could be justified solely by the seriousness of a given charge and its penalty, Congress could have chosen to list the charge in § 3142(f)(1). *See United States v. Lopez-Chilel*, 2022 WL 1178503, at *3 (E.D. Mich. Apr. 20,

17

2022); *White*, 2021 WL 2155441, at *13 ("[F]ederal crimes are generally serious with serious penalties, and yet under the Bail Reform Act release is generally favored in federal criminal cases—as it should be, since locking up persons prior to conviction should be something of a last resort. And in the realm of federal crimes, the seriousness here by no means stands out."); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) ("[I]t is generally accepted that more than evidence of the commission of a serious crime and the fact of a potentially long sentence is required to support a finding of serious risk of flight. A mere theoretical opportunity for flight is not sufficient grounds for pretrial detention." (citation omitted)).

## VIII.    Detaining Scott Pruitt as a Serious Risk of Flight Is Not Only Legally Unsupported, But Is Also Harmful and Unnecessary.

### A.    A Few Days of Detention Can Have Disastrous Consequences on Someone's Life.

Congress was correct to cabin pretrial detention to "extreme and unusual circumstances," because even very short periods of detention have been shown to seriously harm defendants.[38]

For example, according to a recent study published by the Administrative Office of the U.S. Courts, 37.9% of federal defendants detained fewer than three days reported having a negative outcome at work (such as losing their job).[39] Likewise, 29.9% of people detained fewer than three days reported that their housing became less stable.[40] In other words, a substantial minority of people held for only one or two days in federal cases still lose their jobs or their housing as a result of the brief detention.

---

[38] S*ee* Siegler*, supra* note 1, at 70–72 (summarizing research on the negative impact of short periods of detention and describing how "pretrial detention places significant burdens on individuals, families, and communities, yet the data show that these costs provide little societal benefit.").

[39] Alexander M. Holsinger & Kristi Holsinger, *Analyzing Bond Supervision Survey Data: The Effects of Pretrial Detention on Self-Reported Outcomes*, 82(2) Federal Probation 39, 42 (2018), archived at https://perma.cc/LQ2M-PL83.

[40] *Id.*

There is an intuition that pretrial detention protects society, but this is not borne out by the evidence. "The harmful effects of pretrial detention cannot be justified as permissible consequences of protecting the community, since research shows that pretrial detention—for any amount of time—is correlated with an increase in recidivism. By contrast, pretrial release has been shown to improve case outcomes and mitigate the deleterious effects of facing federal criminal charges."[41] In addition, the FCJC's study estimates that pretrial detention imposes a one-billion-dollar price tag on taxpayers.[42]

These fiscal costs pale compared to the human costs: 118,000 human beings are current locked in federal jails, spending an average of 1 year in jail.[43] While in jail, people suffer major personal losses—their job, home, custody of their children.[44] These fiscal costs pale compared to the human costs: 118,000 human beings are current locked in federal jails, spending an average of 1 year in jail. These harms also impact the loved ones and communities of those detained.[45] "The brutal reality is that people detained pretrial in federal jails are deprived of necessary medical care, live in dangerously overcrowded conditions, are subjected to violence, and suffer high rates of COVID-19 infection."[46] Moreover, the high federal detention rates fall overwhelmingly on people of color and those from low-income backgrounds.[47]

The first few days of detention can also be dangerous. According to the Bureau of Justice Statistics, between 38% and 45% of all jailhouse rapes perpetrated on a male victim happen

---

[41] Siegler, *supra* note 1, at 62 (citing studies).
[42] *Id.* at 23.
[43] AO Table H-15 (June 30, 2022) (117,978); AO Table H-9A (June 30, 2022) (361 days).
[44] *See* Siegler, *supra* note 1, at 62 (citing studies).
[45] *Id.* at 62.
[46] *Id.* at 63.
[47] *Id.* at 24.

within three days of admission.[48] Over 40% of people who die in jail die within their first week.[49] Despite the trauma and danger inherent in the first few days of a jail stay, jails' physical and mental health screenings and treatment offerings are often inadequate.[50]

In sum, detaining Scott Pruitt for even one or two days, let alone months, in this case is not just illegal—it could also jeopardize his physical, financial, and mental wellbeing.

**B.      Many Conditions of Release Have Been Proven to Effectively Manage Ordinary Risk of Flight or Nonappearance.**

If the Court somehow finds that the government met its burden below of establishing serious risk of flight such that a Detention Hearing is authorized, Scott Pruitt must nevertheless be released because there are conditions of release that will "reasonably assure" Scott Pruitt's appearance. Any concerns the Court may have about local nonappearance can be allayed by imposing any number of conditions of release that have been shown empirically to reduce the risk of local nonappearance. For example, a study conducted in New York state courts found that text message reminders were able to reduce failures to appear by up to 26%, translating to 3,700 fewer arrest warrants per year.[51] Holistic pre-trial services focused on providing social services and support to clients also reduce the risk of non-appearance across all risk levels in state systems.[52] Beyond the traditional role of Pretrial Services, this could include providing funding

---

[48] Allen J. Beck, et al., *Sexual Victimization in Prisons and Jails Reported by Inmates, 2008–09*, Bureau of Justice Statistics (2010), 22–23, archived at https://perma.cc/H33S-QFPK.

[49] Margaret Noonan, et al., *Mortality in Local Jails and State Prisons, 2000–14—Statistical Tables*, Bureau of Justice Statistics 8 (2016), archived at https://perma.cc/B9CN-ST3K.

[50] *See* Laura M. Maruschak, et al., *Medical Problems of State and Federal Prisoners and Jail Inmates*, Bureau of Justice Statistics 9, 10 (2015), archived at https://perma.cc/HGT9-7WLL (comparing healthcare in prisons and jails); *see also* Faye S. Taxman, et al., *Drug Treatment Services for Adult*

[51] *See* Brice Cooke et al, *Text Message Reminders Decreased Failure to Appear in Court in New York City*, Abdul Latif Poverty Action Lab (2017), archived at https://perma.cc/JCW7-JVZW.

[52] *See generally* Christopher Lowenkamp and Marie VanNostrand, *Exploring the Impact of Supervision on Pretrial Outcomes*, John and Laura Arnold Foundation, Special Report (2013), archived at https://perma.cc/R3F3-KZ76.

for transportation to court, providing childcare on court dates, and assisting clients in finding stable housing, employment or education.[53] Moreover, scholars and courts agree that electronic monitoring is especially effective at reducing risk of flight, although it is also particularly constricting of liberty, and consequently may only be imposed under the BRA if it is the least restrictive condition necessary to "reasonably assure" appearance and community safety.[54]

## IX.    Scott Pruitt Requests Immediate Release with Conditions

Because there is no basis to continuously detain Scott Pruitt, he should be released immediately under the following conditions: signature bond in the amount of $10,000 and the restrictions set forth in the Pretrial Services Report, including no access to internet, remaining in the Northern District of Indiana, reporting to probation, no firearms, no drugs or alcohol.  These conditions will "reasonably assure" Scott Pruitt's appearance. § 3142(c). The prohibition on the use of the Internet will ensure that the alleged source of medium used in this case cannot be accessed. If Scott is prohibited from any drug and alcohol use, this will further reduce his risk of accessing the Internet. Scott's mother is prepared to allow him to reside with her.

---

[53] *See generally* John Clark, *The Role of Traditional Pretrial Diversion in the Age of Specialty Treatment Courts: Expanding the Range of Problem-Solving Options at the Pretrial Stage*, Pretrial Justice Institute (2007), archived at https://perma.cc/5C8C-7HJK.

[54] *See, e.g.*, Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*, 123 Yale L. J. 1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention [T]he question of finding other ways of ensuring anon-dangerous defendant's presence at trial is one not of ability, but of will."); *id.* at 1368–74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the defendant and the government); *United States v. O'Brien*, 895 F.2d 810, 814–16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone [] arguably rebuts the presumption of flight"). *But see also* Siegler, *supra* note 1, at 185 (finding through interviews with stakeholders that electronic monitoring is overused despite the possibility of less punitive alternatives and can impose a "high pecuniary burden for arrestees").

## X.    Conclusion

For these reasons, Scott Pruitt respectfully asks this Court to vacate the detention order and order him released on conditions this Court deems appropriate under §§ 3142(a)–(c). Because the government has provided no permissible basis for pretrial detention under § 3142(f), continuing to detain Scott Pruitt violates the law.

Dated:  May 6, 2026

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By:    s/ Kimberly L. Schultz
Kimberly L. Schultz, Staff Attorney
130 S. Main Street, Suite 300
South Bend, IN 46601
Phone:  (574) 245-7393
Fax:  (574) 245-7394
eMail:  Kimberly_schultz@fd.org