UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.

SCOTT PRUITT

Case No. 3:26-CR-11-CCB-SJF

## OPINION AND ORDER

On July 1, 2026, Defendant Scott Pruitt filed his Motion to Dismiss Indictment raising two issues. First, Mr. Pruitt contends that the indictment is not legally sufficient and improperly targets speech protected by the First Amendment. The Government filed a response on July 15, 2026. The motion became ripe on July 22, 2026, when Mr. Pruitt filed a reply brief. Based on the applicable law, facts, and arguments. Mr. Pruitt's Motion to Dismiss will be denied.

### I. BACKGROUND

On February 11, 2026, Mr. Pruitt was indicted in four counts. The four counts allege that Mr. Pruitt transmitted threats in interstate or foreign commerce in violation of 18 U.S.C. § 875(c) on January 11, 2026 (Count 1), January 12, 2026 (Count 2), January 13, 2026 (Count 3), and January 15, 2026 (Count 4). (ECF 1). The language of all four counts is identical except for the date of the charged offense. As an example, Count 1 reads as follows:

THE GRAND JURY CHARGES:

COUNT 1

On or about January 11, 2026, in the Northern District of Indiana,

SCOTT PRUITT,

defendant herein, knowingly and willfully did transmit in interstate and foreign commerce a communication containing a threat to injure the person of another.

All in violation of Title 18, United States Code, Section 875(c).

(*Id*. at 1). According to the 2025 edition of the Pattern Criminal Jury Instructions of the Seventh Circuit, the elements of a Section 875(c) offense are:

(1) The defendant knowingly transmitted a communication; and

(2) The communication contained a true threat to injure any person; and

(3) The defendant transmitted the communication for the purpose of making a true threat, or knowing the communication would be viewed as a true threat, or consciously disregarding a substantial risk that his communication would be viewed as a true threat; and

(4) The communication was transmitted in interstate or foreign commerce.

At Mr. Pruitt's initial appearance and arraignment on February 17, 2026, the Government made an oral motion to detain him. (ECF 10). After a detention hearing on February 23, 2026, the Court ordered Mr. Pruitt detained based on "the findings and analysis of the matters enumerated in the pretrial services report and as stated on the

record in open court at the detention hearing." (ECF 16). To reach that conclusion, the Court considered evidence proffered by the parties, testimony from Mr. Pruitt's mother, and Government exhibits relevant to the charged offenses against Mr. Pruitt and the other statutory factors. *See* 18 U.S.C. §§ 3142(f)–(g), 3156(a)(4).

On March 12, 2026, defense counsel received discovery from the Government including Facebook posts containing the alleged threats at issue in the indictment and a series of allegedly threatening voicemails left by Mr. Pruitt for the mayor's office. The discovery also revealed that law enforcement had obtained search warrants for Mr. Pruitt's Facebook account[1], a request to cellular service provider T-Mobile, IP address information from Metronet, and an emergency request to Google. (ECF 35 at 7).

On May 6, 2026, Mr. Pruitt filed a motion for release from custody asking the undersigned to review the magistrate judge's original detention order. (ECF 25). After full briefing, the Court held a second detention hearing on June 25, 2026. (ECF 29). The parties proffered evidence; Mr. Pruitt's mother and sister testified; and the Government submitted exhibits. The Court once again found that Mr. Pruitt should be detained "based on the findings and analysis of the matters enumerated in the pretrial services report and as stated on the record in open court at the detention hearing." (ECF 30).

---

[1] In the reply brief dated July 22, 2026, defense counsel notes that "a complete production of the return has not been received." (ECF 35 at 7). The defense does not offer any more information about this incomplete production. Therefore, the Court can only assume that this discovery does not affect the sufficiency of the indictment or present discovery disputes requiring the Court's attention.

## II. Discussion

### A. Sufficiency of Indictment

Federal Rule of Criminal Procedure 7(c) only requires a "plain, concise, and definite written statement of the essential facts constituting the offense charged," but an indictment must comply with all the constitutional protections afforded to criminal defendants. The Fifth Amendment guarantees criminal defendants the right to a grand jury indictment and protection from double jeopardy while the Sixth Amendment guarantees criminal defendants, among other things, the right to know the identity of their accusers and the nature of the charges against them. *United States v. Fassnacht*, 332 F.3d 440, 444 (7th Cir. 2003) (citing *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981)). To be legally sufficient and comport with the defendant's Fifth and Sixth Amendment rights, an indictment must "state each of the elements of the crime charged; . . . provide adequate notice of the nature of the charges so that the accused may prepare a defense; and . . . allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." *Fassnacht*, 332 F.3d at 444–45.

In determining the sufficiency of an indictment, the court reviews the indictment "on a practical basis and in [its] entirety, rather than 'in a hypertechnical manner.'" *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000). An indictment is generally acceptable if it tracks the words of the statute "so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." *Id.* (citing *Hinkle*, 637 F.2d at 1157). But "an indictment that tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars

to 'sufficiently apprise the defendant of what he must be prepared to meet.'" *Fassnacht*, 332 F.3d at 445 (quoting *Russell v. United States*, 369 U.S. 749, 763 (1962); *see also* *Hinkle*, 637 F.2d at 1158 (holding an indictment legally insufficient when it failed to inform the defendant of "the gravamen of the alleged offense").

Title 18, United States Code, Section 875(c) states that "[w]hoever transmits in interstate or foreign commerce any communication containing any threat . . . to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." The language of the indictment against Mr. Pruitt tracks the language of the statute almost verbatim adding only that Mr. Pruitt transmitted the communications at issue "knowingly and willfully" on four specified dates in the Northern District of Indiana. Mr. Pruitt contends that the indictment includes insufficient factual particulars to allow him to understand the nature of the charges against him and to prepare an adequate defense. As Mr. Pruitt states, the indictment does not mention the means of interstate commerce used to communicate the alleged threats, the person targeted by the threats, or the content of the allegedly threatening communications. Despite the absence of these facts, the question is whether the indictment contains enough facts to apprise Mr. Pruitt of the charges against him so he can prepare a defense as required under the Sixth Amendment. *See* *Fassnacht*, 332 F.3d at 445.

An indictment with limited facts is often cured with a bill of particulars that a defendant can request under Fed. R. Crim. P. 7(f) to ensure he is apprised of the charges against him. Absent leave of court, a motion for a bill of particulars must be filed within 14 days after arraignment. Mr. Pruitt never filed a motion for a bill of particulars.

Instead, he contends that the lack of specificity in the indictment makes it invalid and incurable through a bill of particulars. *See Russell*, 369 U.S. at 770 ("it is a settled rule that a bill of particulars cannot save an invalid indictment"); *Hinkle*, 637 F.2d at 1156 (finding that any bill of particulars the Government may have provided "would not have cured [the] deficient indictment"). A bill of particulars can only amend an indictment as a matter of form because any substantive change to the indictment interferes with the defendant's right to an indictment by a grand jury. *See Russell*, 369 U.S. at 770–72 (discussing the constitutional implications of amending indictments to include facts not considered by the grand jury).

Yet the Government argues that the indictment is not defective because it sets forth the offense in the words of the statute and the elements of the offense as outlined in the Seventh Circuit's Pattern Jury Instructions. Additionally, the Government argues that the defense has been provided with ample materials and information through pretrial discovery and the evidentiary proffers and exhibits at Mr. Pruit's two detention hearings to prepare a sufficient defense to the charges.

"[A] defendant is not entitled to know all the evidence the government intends to produce, but only the theory of the government's case." *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981) (internal quotation omitted). "The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *Id.* "An indictment which includes each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation to the statute or statutes violated is sufficient" in an indictment generally. *Id.*

at 134. An indictment is also sufficient without any factual additions through a bill of particulars "when information necessary for a defendant's defense can be obtained through 'some other satisfactory form.'" *Fassnacht*, 332 F.3d at 442 n.2; *see also United States v. Musgrove*, 845 F. Supp. 2d 932, 944 (E.D. Wisc. 2011).

As to the elements of the offense, Mr. Pruitt outlines the evolution of the *mens rea* requirement in "true threat" prosecutions through the Supreme Court's holding in *Counterman v. Colorado*, 600 U.S. 66 (2023). (ECF 32 at 3–4). After *Counterman* and consistent with the First Amendment, the Government must prove both that an alleged unprotected "true threat" would be viewed objectively as a genuine threat, and that when making the alleged "true threat," the defendant consciously disregarded a substantial risk that the statement would be viewed as threatening. *Counterman*, 600 U.S. at 69. In other words, the Government must prove at least recklessness, or that the defendant "had some subjective understanding of the threatening nature of his statements," in making the objectively threatening statement. *Id.* at 69, 74, 79; *see also United States v. Sheikh*, 164 F.4th 629, 633–34 (7th Cir. 2026). The objective prong is reflected in the second element listed in the Seventh Circuit pattern jury instruction, which reads: "The communication contained a true threat to injure any person." The subjective prong is reflected in the third element of the instruction reading: "The defendant transmitted the communication for the purpose of making a true threat, or knowing the communication would be viewed as a true threat, or consciously disregarding a substantial risk that his communication would be viewed as a true threat."

Mr. Pruitt seems to argue that the "true threat" indictment against him is defective because it does not allege that "(1) the statement made would, objectively be understood as a genuine threat, and (2) that the defendant subjectively disregarded a substantial risk that the statement would be seen as threatening." (ECF 32 at 4). He does not cite to any authority that the objective and subjective prongs must be incorporated into an indictment to make the indictment sufficient. Rather, all the authority cited speaks of the proof required for a conviction.

Moreover, there are implicit allegations in indictments, including Mr. Pruitt's indictment, that should be considered. "An implicit allegation of an element of a crime is enough; the indictment 'need not specifically allege' every "component part of the offense." *United States v. Khan*, 937 F.3d 1042, 1049 (7th Cir. 2019) (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 107-08, 108 n.4 (2007)). Here, the state of the law post-*Elonis* and *Counterman* clarifies the standard for defining an unprotected true threat subject to prosecution under Section 875(c). Given this legal context, the indictment arguably implies both the objective and subjective prongs of a "true threat" determination. Additionally, the "knowingly and willfully" language in the indictment implies that Mr. Pruitt's mental state when making the charged communications exceeded mere knowledge that the alleged communication was a threat. *Cf. United States v. Dutcher*, 851 F.3d 757, 762–763 (7th Cir. 2017) (comparing the *mens rea* language of "knowingly and willfully" in 18 U.S.C. § 871(a) regarding threats against the President favorably to the objective and subjective requirements laid out in *Elonis v. United States*, 575 U.S. 723 (2015) and extended to recklessness in *Counterman*, 600 U.S. at

69); Seventh Cir. Pattern Criminal Jury Instructions, 18 U.S.C. § 1001 ("A person acts 'willfully' if he acts voluntarily and intentionally, and with the intent to do something illegal."). Therefore, the indictment sufficiently alleges the elements of the offense.

Mr. Pruitt then argues that the indictment lacks factual specificity. He contends that the indictment fails to allege the means of interstate commerce used to communicate the alleged threats, the person allegedly threatened by the communications, or the content or nature of the threat communicated. As such, he asserts that the indictment merely recites the elements of the statute without providing sufficient information about any of the elements of the offense leaving him unable to prepare an adequate defense to the charge.

In support, Mr. Pruitt emphasizes that cellular phone and internet usage, including phone calls in interstate commerce, text messaging, emails, and social media posts, is so prolific that the volume of such communications by any one person on any given day could be large. As a result, he concludes that the four dates listed in the indictment are insufficient to distinguish which communications are being charged making it impossible to prepare a defense. Mr. Pruitt rejects the Government's assertion that he received all the necessary information about the alleged threatening communications through discovery and evidence presented at the detention hearings by pointing to the confusing nature of that information. He acknowledges that certain Facebook posts have been identified but highlights the lack of dates attached to them preventing them from being linked to any count in the indictment. Mr. Pruitt reports further confusion from the information produced about his IP address, which

references four dates and times that do not necessarily correlate to the dates in the indictment. Mr. Pruitt also notes that the alleged target's name was redacted in all the discovery information produced and that the voicemails to the mayor's office were mentioned at the detention hearing without clarity as to whether they are among the alleged threatening communications.

Mr. Pruitt's motion shows that the indictment fails to provide all the facts necessary to prove the charges against him. But his motion to dismiss the indictment can only be granted if he establishes that the indictment does not provide "enough factual particulars" to apprise him sufficiently of the charges he must defend against and the "gravamen of the alleged offense." *See Fassnacht*, 332 F.3d at 445; *Russell*, 369 U.S. at 763; *Hinkle*, 637 F.2d at 1158. The Government does not need to allege "every factual nugget necessary for conviction" in the indictment. *Fassnacht*, 332 F.3d at 445 (quoting *Smith*, 230 F.3d at 306); *see also United States v. Carroll*, 320 F. Supp. 2d 748, 752 (S.D. Ill. 2004) ("FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(2) authorizes dismissal of an indictment if its allegations do not suffice to charge an offense, but such dismissal may not be predicated upon the insufficiency of the evidence to prove the indictment's charge." (emphasis in original) (internal citations omitted)). And "in determining whether an indictment provides sufficient information to enable the preparation of a defense, 'the presence or absence' of any particular fact need not be dispositive of the issue.'" *Fassnacht*, 332 F.3d at 445 (quoting *Smith*, 230 F.3d at 305).

As an example of a sufficient indictment, Mr. Pruitt directs the Court to a Section 875(c) indictment in the Northern District of Illinois, which traced the statutory

language but also included many additional facts including the social media platforms used by the defendant, the categories of individuals targeted by the threats, and the exact language of at least one alleged threat. The Illinois indictment also tracked the applicable *Counterman* recklessness standard by explicitly stating that the "defendant transmitted the communication for the purpose of making a threat, knowing that the communication would be viewed as a threat, and recklessly disregarding a substantial risk that others would regard the communication as a threat." (ECF 32 at 6 (quoting the Northern District of Illinois indictment in *United States v. Michael Stover*, 1:25-cr-540)).

Mr. Pruitt also cites *United States v. Forbes*, 3:14-CR-026 JD, 2015 WL 128008 (N.D. Ind. Jan. 5, 2015), a drug trafficking case where this Court dismissed a superseding indictment because the recitation of the elements alone did not apprise the defendant of the charges against him. In that case, the statutory elements in the indictment were ambiguous and could have referred to any number of acts and offenses. *Id.* at *3. A single count of the indictment represented a seven-month window of alleged conduct in which over 100 offenses could have fit. *Id.* at *2. The Court did not suggest that the indictment had to provide all the missing details to be sufficient but did note that at the least, details were necessary to "pin[] down the specific conduct at issue." *Id.* The Court also explained that the Government had learned about some offenses listed in a bill of particulars after securing a superseding indictment, "meaning the grand jury could not have charged or even considered those offenses." *Id.* at *5; *see also Russell*, 369 U.S. at 770–72.

Mr. Pruitt's indictment obviously contains fewer factual particulars than the Illinois indictment, which was undeniably sufficient. Yet Mr. Pruitt's indictment can be distinguished from the deficient *Forbes* indictment. Each of the four counts in Mr. Pruitt's indictment narrows the scope of the offense to a single day identified by date. No one disputes that on each day identified in the indictment, Mr. Pruitt could have communicated via social media posts, telephone calls, text messages, or emails beyond the instances disclosed to him in discovery and at the two detention hearings. But Mr. Pruitt provides no context for how voluminous his communications were on those days making it difficult to confirm any challenge he may face in identifying the communications at issue. This is especially true because the Government has not asserted that any communications beyond those disclosed in discovery and at the detention hearings on February 23, 2026, and June 25, 2026, are at issue in these charges. Therefore, the indictment is not so ambiguous so as to prevent Mr. Pruitt from preparing a defense as to the communications disclosed to him.

Furthermore, the indictment need not identify the target of the alleged threats or the exact content of the threats to be deemed sufficient. The Seventh Circuit pattern jury instructions define "true threat" as:

> A "true threat" is a serious expression of intent to commit unlawful physical violence against another person or a group of people. The communication must be one that a reasonable observer, considering the context and circumstances of the statement, including surrounding communications, would interpret as a true threat.
>
> The government does not have to prove that the defendant actually intended to carry out the threat, or even that the defendant had the capacity to do so. At the same time lack of intent or lack of capacity to

> carry out the threat can be relevant circumstances in deciding whether a communication is a true threat.
>
> A threat does not need to be communicated directly to its intended victim, or specify a particular victim, or specify when it will be carried out.
>
> A communication is not a true threat if it is merely idle or careless talk, exaggeration, or something said in a joking manner.

As the Committee Comment notes, this pattern instruction is based on the definition of "true threat" in *Elonis* and was approved after *Elonis* in *United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019). The instruction confirms that the Government is not required to prove that the alleged threat was communicated directly to an intended victim or to specify a particular victim. Therefore, the victim's identity is not an element of the charge that must be included in the indictment. Despite this, Mr. Pruitt has known about the victim's identity since February 20, 2026, when the Pretrial Services Report was filed in this case. The Pretrial Services Report summarized the facts underlying state court charges against Mr. Pruit that were dismissed but were the foundation for the charges in this case. In so doing, the Report included the victim's name. (ECF 13 at 3). Thus, Mr. Pruitt received the name of the victim through means other than the indictment and can prepare any defense necessary related to this individual. *See Fassnacht*, 332 F.3d at 442 n.2; *Musgrove*, 845 F. Supp. 2d at 944.

The "true threat" instruction also shows that the context and circumstances of any alleged threat, "including surrounding circumstances" is all relevant to the jury's determination of whether a communication qualifies as a "true threat." The Government has identified the Facebook posts alleged to be the threats at issue in the

four charges against Mr. Pruitt. The Government has also explained that the voicemails to the mayor's office, read into the record at the second detention hearing, are not the threats charged in the indictment because they were made on December 19, 2025, and January 8, 2026—not any of the four dates charged in the indictment. Mr. Pruitt notes that no documentation has been provided to corroborate the dates of the voicemails. That may be true. But the indictment need not include factual particulars of circumstances surrounding the alleged threatening communications or information corroborating those circumstances to be sufficient. *Cf. United States v. Carrier*, 672 F.2d 300, 306 (2d Cir. 1982), *cert. denied*, 457 U.S. 1139 (1982) ("Surrounding factual circumstances may not easily be required to be recounted in all indictments."). The alleged threats have been sufficiently identified through discovery and the detention hearing evidence. Mr. Pruitt has what he needs to prepare a defense.

Having alleged the time and place of the alleged offenses as well as the elements of the offense tracking the statutory language of Section 875(c), the indictment is legally sufficient.

**B. True Threats and the First Amendment**

Mr. Pruitt also contends that the indictment should be dismissed because the alleged threats he is charged with communicating all amount to speech protected by the First Amendment. "True threats of violence . . . lie outside the bounds of the First Amendment's protection." *Counterman*, 600 U.S. 66 at 72. Therefore, a defendant cannot be convicted under 18 U.S.C. § 875(c) unless the Government proves that the defendant made a "true threat," or a "serious expression[] conveying that a speaker mean[t] to

commit an act of unlawful violence." *Id.* at 74 (internal quotations omitted); *see also* *Watts v. United States*, 394 U.S. 705, 708 (1969); *Virginia v. Black*, 538 U.S. 343, 359 (2003). To be a true threat, a communication must satisfy the objective and subjective standards outlined above. *See Counterman*, 600 U.S. at 74, 79; *see also Elonis*, 575 U.S. at 733.

Speech on public issues and political matters is, however, protected by the First Amendment even if it is offensive, unsettling, immoral, or wrong. *Connick v. Myers*, 461 U.S. 138, 145 (1983) ("speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection"); *cf. Matal v. Tam*, 582 U.S. 218, 246 (2017) ("Speech that demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground is hateful; but the proudest boast of our free speech jurisprudence is that we protect the freedom to express the thought that we hate." (internal quotations omitted)).

Mr. Pruitt frames his alleged communications as expressions of disdain for law enforcement and displeasure with federal officials spurned by the events of January 2026 in Minnesota related to federal immigration enforcement efforts. He contends that the charged communications, which he describes as "passionate, provocative, hyperbolic commentary in response to community crisis resulting from hotly contested political issues on both the community and national scales in a public setting," are political speech protected by the First Amendment. (ECF 32 at 8). He emphasizes that the indictment fails to allege either the objective or subjective prongs necessary to establish a true threat. Thus, he concludes that the indictment should be dismissed. The sufficiency of the indictment as to the objective and subjective prongs of the offenses

has already been resolved. The only remaining issue is whether the charged communications are clearly political speech so as to justify dismissing the indictment.

Undisputedly, a prosecution under Section 875(c) is only sustained if the Government proves that the communication at issue qualifies as a "true threat." That determination, however, is "addressed by the requirement of proof beyond a reasonable doubt at trial, not by a dismissal at the indictment stage." *United States v. White*, 610 F.3d 956, 959 (7th Cir. 2010). The jury's role is especially necessary in Mr. Pruitt's case as shown by the examples of the alleged threats he copied into his reply brief. Some of those are included below. Note that Mr. Pruitt allegedly made social media posts under the name Phil Thomas.

Phil Thomas
January 13 at 5:56 AM
"FREE GUNS TO KILL ICE AGENTS IN MINNESOTA. Headshots kill all cops. Start the killings today. Don't miss out on your chance to finally start killing cops. Get you gun today. Put holes in ICE AGENTS HEADS tonight. Selfdefense killings are still great cop kills"

Phil Thomas
January 12 at 6:04 PM
"LETS start paying people to kill ICE AGENTS"

Phil Thomas
January 11 at 9:07 AM
"FREE GUNS TO HUNT DOWN AND KILL ICE AGENT JOHNATHAN DAVID ROSS. He's armed and dangerous so make sure you use all you ammo on his face. Happy killing"

Phil Thomas
January 10 at 6:32 PM
"1,000,000 for anyone killing the ICE AGENT Johnathan David Ross."

(ECF 35 at 3).

In his reply brief, Mr. Pruitt cited several more communications attributed to him containing similar language that are not reproduced here. The language in the communications explicitly advocates for killing cops and ICE agents generally and one ICE agent and a cabinet secretary identified by name. This language raises concern that

the charged communications could be objectively viewed as genuine threats and that Mr. Pruitt subjectively disregarded a substantial risk that the statements would be viewed as threatening, or acted recklessly in making these statements. Therefore, it is plausible that the charged communications exceeded the parameters of protected political speech. Accordingly, a jury must resolve the question of whether Mr. Pruitt transmitted any "true threat" as charged. The Court will not subvert the jury's important role in both the prosecution of unprotected speech and the preservation of Mr. Pruitt's First Amendment rights.

## III. CONCLUSION

For the reasons discussed above, Mr. Pruitt's Motion to Dismiss Indictment is **DENIED**. (ECF 32).

SO ORDERED on August 21, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT